UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA

     V.                       20-CR-006 (BMC)

AARON WEINREB

          Defendant.
-----------------------------------------------------X


### SENTENCING MEMORANDUM ON BEHALF OF AARON WEINREB


Saul Bienenfeld
Bienenfeld Law
680 Central Avenue
Suite 108
Cedarhurst, New York 11516
212-363-7701
saul@bienenfeldlaw.com

Attorney for Aaron Weinreb

1

**INTRODUCTION**

There is a vast difference between an excuse and an explanation.  An excuse often serves as the basis for exoneration, an explanation, on the other hand, does not; it merely puts details in context.  The purpose of this Sentencing Memorandum is not to provide an excuse for the defendant's criminal behavior; it is intended to provide the Court with an explanation as to how Aaron "Ari" Weinreb finds himself before this Court.

At this point, the Court is familiar with only one side of Ari Weinreb.  Through this memorandum I will introduce the Court to the complete Ari Weinreb – well-known physician, family man, community leader and charitable soul, to make the Court aware of the illness he has silently been dealing with and how that illness and a confluence of factors led to a crime being committed, the remorse and responsibility he has shown for his actions, and finally to show the Court the remarkable strides he has made since his arrest.

The Ari that the "outside world" saw was a smiling, well-adjusted, caring doctor who was a family man and good friend.  Certainly, not the type of person who would commit the crime to which Ari has pleaded guilty.

Ari was and is a charitable person who genuinely cares for the needs of his fellow man. His life was based on what he could do for others and how to make the lives of others better.  His charitable donations were not strictly monetary.  Indeed, money was the smallest component of his charity work. Ari's giving encompassed his time, energy and medical expertise, all of which were given to benefit his patients, organizations and those in need.

Ari has pleaded guilty to a one-count superseding information charging a violation of 18 U.S.C. 2422(a), which prohibits "knowingly and intentionally persuade, induce, entice and coerce an individual, to wit: John Doe  #1, (hereafter "JD1") an individual whose identity is known to the

2

United States Attorney, to travel in foreign commerce, to engage in sexual activity for which a person can be charged with a criminal offense…" Ari, at the depths of an uncontrolled illness, intentionally persuaded  John Doe #1 (JD1), a person under the age of 17, to travel to New York to engage in sexual activity.  Ari Weinreb takes full responsibility for what he has done, is deeply remorseful for the harm he has caused to his victims and makes no excuse for his actions.

How is it possible that the person described above is the same person who committed this crime and is now before you for sentencing?

It may never be possible, perhaps not even for Ari, to fully understand what caused him to persuade JD1 to travel and engage in unlawful sex once he became aware of his victim's true age.  But there are several aspects of this case that cry out for the Court's attention when deciding a proper sentence.

I respectfully submit this memorandum on behalf of Ari Weinreb to provide the Court with a fuller account – beyond the four corners of the Court's file – both of Ari's crime and the broader context of a remarkable life that has resulted in so much good.  Punishment must of course be imposed, but the sentence here should reflect the truly unique circumstances of this case.  The sentence should also reflect the specifics of Ari's illness, which Ari has made tremendous progress in addressing and which requires continued daily treatment.  Finally, the sentence should provide the Court with tools – and Ari with incentives – to continue on his path towards wellness.

Once the Court has a full picture of all facets of Ari's life, I am confident that the Court will understand the underlying etiology that led to his illness and how this struggle with addiction to lust ultimately led to his crime and arrest.  Bearing this in mind, I will endeavor to explain the nature of sex addiction, the defendant's illness, in order to demonstrate to the Court the therapeutic and corrective measures the defendant has undertaken in the last 20 months since his arrest.

**Ari's Personal Background**

As Judge Rakoff has observed, "if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be in the moment of his sentencing, when his very future hangs in the balance." *United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 S.D.N.Y. 2006). It is therefore important to begin to note that Ari is a person of humble beginnings, who transcended a difficult childhood and struggled with his sexual identity to build a remarkable career in medicine and become a well-respected doctor and a pillar of his community.

**Ari's Troubled Childhood**

Ari was born on August 28, 1971 in Brooklyn to Robert, a self-employed accountant, and Sarah, a now-retired registered nurse. (PSR ¶ 68) Ari had in many respects a secure, middle class upbringing. But there was turmoil beneath the placid surface; Ari was raised by an overbearing mother and an emotionally absent father. His mother, the child of a Holocaust survivor, was overbearing, exerting her control and dominance over Ari, thereby criticizing every choice Ari made on his own. Ari's father seemed dispassionate and disinterested in anything and everything important to Ari which made him very uncomfortable when he was around his dad.

Children learn from their environment. The emotional detachment Ari learned from these formative years followed him into adolescence and adulthood where he experienced his desires for same sex attraction. Ari first engaged in sexual activities with men beginning in high school. Ari has since been fighting this unwanted attraction to men for as long as he could remember as it was not in line with his strict Orthodox Jewish religious upbringing and the societal pressure he would have to publicly endure.

**Ari as a Young Adult**

4

When Ari decided to marry, he was anxiety ridden due to all of his past sexual experiences with men.  He sought professional and rabbinic advice, sharing the truth about himself in that he feared that he was not like other students.  The professionals and Rabbis told him that marriage would "cure" him and that after his first sexual encounter with a woman he would no longer desire men. Ari took the advice at face value, if anything to relieve him from his turmoil and what turned out to be a false sense of hope.  Six months into his marriage, Ari told his wife about his homosexual desires. Neither had a solution so they pretended the problem did not exist. Thus was born a life of denial and outward disavowal of Ari's true essence.

To understand Ari's struggles in their proper context, it is essential to understand how far publicly acknowledging, much less acting on, his homosexual orientation would stray from the accepted (and acceptable) Orthodox Jewish path:

> Across the spectrum of Orthodox practice, the consensus view is that gay sex and marriage are inconsistent with Jewish tradition. The objection is rooted in two verses in Leviticus that expressly prohibit a man from lying with another man "as one lies with a woman," an act described as an "abomination" that is punishable by death. Though the prohibition is understood to refer to a specific sexual act, later rabbinic authorities expanded the prohibition to include lesbian sex and sexual activities other than intercourse.
>
> Moreover, sacred texts hold up heterosexuality as the foundational ideal. The creation story in Genesis describes the complementarily of male and female, of man's loneliness rectified by his partnership with woman. The very first commandment God gives to Adam and Eve in the Bible is to be fruitful and multiply — that is, to have children. Considered in its totality, Orthodox Jewish tradition comes down firmly in favor of heterosexuality as God's intention for humanity, which has in turn severely limited the

5

acceptance of homosexuality within the Orthodox community.[1]

As an observant member of the Orthodox community, these views formed Ari's understanding of sexuality and his determination to enter into a heterosexual marriage.  As a person of strong faith, Ari was committed to living an upstanding life of Orthodox Jewish values, and kept his struggle a dark secret, never sharing with anyone his deep underlying loneliness and turmoil.

Within time, Ari compulsively and clandestinely sought out sex with men. This second life became addictive. Ultimately his addiction took over and his decision-making dissipated as it was overcome by the powerlessness he was experiencing. The acting out with men never brought him any real satisfaction or the true connection that he was seeking.  Instead of making him feel better, it made him feel empty which reignited the addiction cycle. Compulsive behavior has no master; it is the master of the mind in which it resides – without admitting there was a problem, Ari could not break the cycle of addiction. See Ex 1 .Letter from the Defendant.

**Letters of Support**

As demonstrated in the numerous letters from Ari's family, he is truly a unique individual who "has looked out for the other person's interest before his own" (Bernard Weinreb, uncle). He is deeply committed to his family, a person who cared for his elderly grandmother and inspired others in the family to do likewise. "When she was old and difficult to deal with, he visited her constantly and spent a lot of time making sure she was taken care of, taking the lion's share of the

---

[1]"Orthodox Judaism and LGBT Issues: Efforts to make the community more compassionate have stopped short of sanctioning gay relationships," *My Jewish Learning*, accessed Jul. 10, 2020 (available at https://www.myjewishlearning.com/article/orthodox-judaism-and-lgbtq-issues/)

responsibility for her care." (Rabbi Pesach Scheiner, Cousin).   "Ari has always been a compassionate, soft spoken and devoted family man" as mentioned by Eliyahu Simpson.  He is described as "one of the most kindhearted, generous and sincere people" his cousin Rabbi Dovid Simpson knew.  Ari's brother Elliot, an attorney, describes Ari as the "bedrock of our family" who welcomed people to his home and opened his home for charitable causes.

Ari's aunt, Rebecca Scheiner, describes a uniquely empathetic individual who upon hearing from a patient that her mother recently died of breast cancer began to cry and had to compose himself prior to speaking to her.  Nathan Treitel informs the Court that "Ari always looked for ways to make the world a better place."  Yitzchok Gilboa, an older distant relative of Ari was constantly invited over to Ari's house for Shabbat so that he would not be alone on the weekend and was invited to lunch with Ari midweek so that he would have someone with whom to chat.

Additionally, each-and-every family letter in Ex. 2 are from people who have spent time with Ari both prior to and after his arrest.  They all attest to the true remorse that Ari has shown as well as his remarkable rehabilitation and repentance.

**Ari's Friends**

Attached as Exhibit 3 are over twenty letters from individuals who consider themselves close friends of Ari.  These letters were all written after Ari's arrest and each of the writers knew what Ari was charged with prior to submitting a letter.  Rather than ignoring their friend or shunning him for his crime, they all agreed to try in their own way to impress upon this Honorable Court that Ari is deserving of a second chance.

The letters have the following ideas in common:

- Ari is one of my closest friends

- Ari is a man who loves being with his children and watching them excel

- Ari is an exemplary community leader

- Ari is constantly concerned about the welfare of his patients

- Ari has tremendous remorse for his actions

- Ari is full of contrition

- Ari has taken full responsibility for his actions

- Ari is charitable and raises money for needy families.

- Ari loves to learn Judaic studies, especially the Talmud

- Ari is empathetic to the needs of others and cries when he learns of another's misfortune

- Ari is on a journey of self-improvement

- Ari cares about long lost friends and attends their parent's funerals

- Ari is in 12-step recovery program

- Ari is brutally honest

- Ari is a kind and caring person

- Ari is a caring father/husband

- Ari makes you feel that he has your undivided attention when speaking with him

- Ari blames only himself for his actions

- Ari gives back to his community

- Ari is a loving, caring, devoted family man

- Ari looks out for the needs of others

- Patients always spoke highly of Ari

- Ari is always smiling, full of life, empathetic and has a great sense of humor

- Ari helps others

- Ari is a righteous, kindhearted and morally good person

- Ari is deserving of a second chance

Ari must truly be a remarkable individual to have such glowing praise written about him in spite of the fact that he has committed a sexual offense against a minor.  What is it that these friends see in Ari that they want to stand up for him in Court and let Your Honor know that Ari is still a decent person?  Perhaps it is that Ari truly is a wonderful, empathetic and charitable person who suffers from an unwanted addiction to lust.  His friends were able to see past his crime and judge him favorably in spite of his crime, because they know he is not a predator.


**Ari's Remarkable Career as a Physician**

Straight out of residency in 2002, Ari built his practice from the ground up, one patient at a time. He has had the same patient base for 17 years, because family brought family and friends brought friends. In a true testament to the dedication and loyalty that Ari's patients have for him, in the most recent years, his practice began to span generations: mothers brought their newly married daughters and Ari cared for them with the same dedication as he had for their mothers.

Ari's professional career can be broken down into three phases:

2002-2009 - Ari was a faculty member at NY Methodist, where he began his private faculty practice in the Midwood, Brooklyn NY community.

2009-2017 – Ari's private faculty practice continued to grow by leaps and bounds. The practice grew so large that he could no longer continue his faculty position.  Although he loved his responsibilities of teaching the residents and medical students, he wanted to be fully dedicated to whatever role in which he was engaged.  Accordingly, although it was a difficult decision, Ari terminated the faculty position and began to concentrate only on his private patients' needs.  For

years, he considered taking on a partner, but his patients were like family, and he felt he needed to be there for each one.

Finally in April of 2017, with NYU's purchase of Lutheran Hospital in Brooklyn and with the establishment of its first Brooklyn location, NYU actively sought out and recruited Ari to join their ever-growing team. NYU made him the medical director of NYU Langone OB/GYN Associates -Midwood, and assigned a full medical team including two doctors to work under his guidance and assist him with his fast-growing practice. Remarkably, all his patients remained loyal to him and transferred with him to the new hospital.

Ari's extraordinary success was due to his professionalism, dedication, selflessness and trust. Malgorzata Dzieran, his dedicated nurse for 14 years, through all three phases of his medical practice, writes: "When I started working with him, he was seeing only few patients per week. Over several years, thanks to his incredible hard work, professionalism, and compassion for his patients, he was able to build a large and successful practice." Gitty Weinstein, his office coordinator, praises Ari and writes that "As Aaron continued to build his practice from nothing to one of tremendous proportions the quality of care he provided to his patients never faltered." See Ex.4 letters from Ari's staff.

Of note, in his first role as faculty member, Ari was the Associate Residency Program Director, a position normally held by someone 20 years his senior. The Department Chairman at the time, Mark Spitzer MD, writes, "In recognition of all he was doing for the residents, I eventually promoted Doctor Weinreb to the position of Assistant Residency Program Director. He responded to the promotion by taking on even more work, much of it on his own time. Given the fact that he was one of the more junior members of the faculty at the time, his promotion over

10

more senior physicians was recognition of all he was doing to help educate residents in our program."  See Ex. 5 letters from Ari's colleagues.

Lastly, concurrent to above, from 2014 until his arrest, Ari served as the Director of Gynecology at NY Community Hospital, a small community hospital. He was available to them 24/7; he did not accept the position for the prestige or the money but rather because he just could not decline helping this smaller medical institution.

**From the Patients Perspective**

To say that Ari's patients loved him is an understatement – they adore him and miss him even with the full understanding of his charge and arrest for a  sex crime.

Ari's true selflessness and compassion for others, is noted in numerous letters written directly by his dedicated patients attesting to his caring manner as a beloved OB/GYN physician. Chaya Eisen noted that "words will not suffice to describe the care, empathy and patience that Dr. Weinreb has shown … Those that were not his patients cannot relate to the tender care we have always received from our revered doctor." Shaindy Stein echoes this theme, describing "Dr. Weinreb, a man with much devotion, a doctor with a large heart. A selfless human being with so much dedication to others." Lifsha Rotenberg points out how "the atmosphere in the office was always so welcoming, warm and caring. It was so clear that it all filtered down from their boss." Bracha Zahn notes how "Dr. Weinreb came through time and time again … When it came to helping another person, no issue was too small or too insignificant for him to extend himself and assist them wholeheartedly. I say this from my own personal experience and I know that others feel the same as I do." And Rachel Paskus, a patient, noted that "it wasn't just his professional care that brought us back to his practice each time again. It was his personality, his demeanor, his mannerism; his honesty; his values. And the fact that he is a real "mensch."

That is just a sampling of some of the 74 letters that are attached hereto evidencing the fact that Ari was an amazing physician. These letters, written mostly by mothers of small children, knew what Ari was accused of yet they took the time to let this Court know that they stand by him in spite of his crime. In all the letters submitted by his patients, the same theme repeats itself. Many patients have stated that they are looking forward to returning to Dr. Weinreb in the near future. See Ex. 6 (letters from patients)

**Doctors, P.A.'s, Nurses and Office Staff**

Ari's selflessness, compassion and humility were well noted by his superiors and his own medical staff. Dr. Mark Spitzer, former chairman of NY Methodist Hospital, noted about Dr. Weinreb that, "In terms of responsibilities, his job was similar to many who came before and after him. However his approach and attitude to the job was completely different. Rather than doing just the bare minimum of resident teaching and focusing on his financial interests as had so many others, Dr. Weinreb went out of his way to teach. He selflessly took of his own time to work with the residents." Ex. 5. Gitty Weinstein, his office coordinator recalls that "patients who found themselves without insurance but in need of medical care were charged the most nominal fees, just to help them retain their dignity and self-respect. For those in true financial straits, office visits were free. Every patient was provided with the same quality of care, respect and personalized attention regardless of their ability to pay." Lastly, Margo Dzieran, RN, commented that "as my supervisor, he always showed a big heart for all people around, mindful of his employees' opinions, preferences and wishes… I was never afraid to approach him with any, either personal or work related issues. He was always open-minded, kind and helpful." See, e.g., Exhibit 4

In short, while Ari may now be best known for having a gay sex encounter with a minor, his committed medical expertise over the past twenty years have improved and saved the lives of

hundreds of patients and helped the infertile conceive. Ari has had some of the same patients for over 17 years and has been present for some of their lifecycle events.  He has become a part of his patients' lives and has shown them an extraordinary level of compassion and care. Tragically, and as will be further discussed below, some of the qualities that helped Ari succeed in medicine – including the frenetic pace, irregular work and sleep schedule, regular sleep deprivation, hours of isolation and loneliness, separation from his core family unit while trying to stay dedicated to his patients, family and all other community obligations – helped bring about his downfall.

**Ari's Community Achievements and Honors**

Charitable institutions honored Ari Weinreb not because he contributed money towards their causes but rather because of the outstanding person and character that they observed in him. These institutions wanted to honor a person who the community wished to emulate, a person with empathy who looks to help his fellow man and not just someone who can write big checks.

In 2012, Ari was honored by Bikur Cholim Chesed Organization (Guardians of the Sick) with the Physician of the Year Award.  Ari had no prior affiliation with Bikur Cholim Chesed Organization and was not a prior donor, yet was chosen as the awardee because of his remarkable dedication to the community. See Ex. 7

Ari has been directly involved in all of his children's schools. Mesivta Netzach Hatorah, the local boy's high school that his children attended, wants this Court to know that Ari was instrumental in building the school from its early stages. They write: "Ari Weinreb was one of the original parents who recognized the community's need for a new school. He has since then been actively involved in collaborating with the school's administration for its continued growth and success." Rabbi Baruch Lovett of Torah Academy for Girls, the school where Ari's daughters attended, writes that Ari was a "donor to the school who wanted to support the school in any way

13

he could." Rabbi Yaakov Bender, the Dean of Yeshiva Darchei Torah, the elementary school his sons attended in their formative years, discusses how Ari not only paid for his own sons' tuition but also donated to the scholarship fund so that other less fortunate families can send their sons to this school. Interestingly, it was another neighborhood institution which Ari's sons did not attend, that chose to honor Ari. In his little free time, Ari spent a considerable portion of it at the Yeshiva Gedolah of the Five Towns, engaged in his own Talmudic studies. In June 2011, they honored Ari to highlight his dedication, commitment, and the respect that he earned from the community and his peers. This particular award is reserved for an individual who is community minded, displays a combination of Torah true values and serves as an example for others to emulate.  See Ex. 8

In January 2008, Ari received the Medical Achievement Award from ATIME, a charitable community organization devoted to assisting childless Jewish couples yearning for a baby of their own. Ari was recognized for the countless hours of time he dedicated for free on their behalf, both through direct patient care, community lectures, education and knowledge.  Ari had been a member of the ATIME Medical Advisory Board prior to this award and has remained so until recently. See Ex. 9

**Ari's Charitable Work Specific to Medical Organizations:**

Ari, an extremely busy doctor in a single practitioner practice, was a charitable person who genuinely cared for the needs of his fellow man.  His life was based on what he could do to improve the lives of others.  He gave money to charity, but more importantly, he gave of his time, energy and medical expertise to his patients, organizations and his community

Chaim Landau, Director of Bonei Olam, an organization supporting patients suffering from infertility, recalls asking Dr. Weinreb to take calls on a medical hotline, noting, "it was quite surprising that being at that point he had a full practice in OB/GYN, and one generally doesn't

volunteer his profession without compensation. But for Ari that was the natural process." Saul Rosen, founder and CEO of ATIME, a similar organization supporting those with infertility, noted that "Dr. Aaron Weinreb's personal cell phone number was freely shared by the many rabbis, couples and the ATIME staff for any questions and concerns. This was all done with so much caring and devotion and completely free of charge." Aron Jacobowitz, Director of Procreative Consultants, writes how when unaffiliated community members required emergency attention, "Dr. Weinreb could always be counted on. When he was called to intercede, 'No' was not part of his lexicon." Malki Klaristenfeld, Director of the medical resource organization Knafayim (Wings of Hope), recalls how she once called Dr. Weinreb at 12:30 AM for a woman who was in need of emergency surgery but did not have a doctor. By 1:45 AM, she had received a text from Dr. Weinreb that he was in the operating room with her. See Ex. 10

**Ari's Other Charitable Works**

Ari was not exceedingly wealthy but was a charitable person who genuinely cared for the needs of his fellow man.  In addition to the money he gave to charity, it is the manner in which  he gave it and in which he gave of himself, that is most remarkable.

Rabbi Eliezer Friedman met Ari in Israel over 30 years ago, and notes how Ari has been steadily financing a small stipend for over a dozen families in Israel who struggle financially. Although his donations over the years do not equal a great sum of money, they certainly added up to a six-figure amount over time.  What is interesting to note is how the offer came about. Ari met Rabbi Friedman, a very holy and spiritual Rabbi but extremely poor, and after several years of friendship, offered to help support his old friend and family.  Rabbi Friedman refused Ari's offer, but instead  partnered with Ari in this private charity wherein Rabbi Friedman distributed funds that Ari sent to Israel to needy families.  Ari never sought the recognition and has remained the

anonymous donor for 14 years.  See Ex 11.  When Yeshivas Neimus Moshe needed to raise money, they turned to Ari, who together with his then-wife, organized a parlor meeting in their home where over 100 people attended and funds for the school were raised.  What is important to note is  the fundraiser for the school, Rabbi Josh Freidman, did not have to run after Ari for a contribution, but rather Ari willingly and generously helped the school.  See Ex.12

In 2016, a baby was born to an HIV positive father and had a high risk of being HIV positive himself.  The pediatrician was unable to find a Mohel (ritual circumciser) to perform the bris (circumcision).  The night before the bris, Dr. Simai, the newborn's pediatrician, called his friend Ari Weinreb who not only jumped at the opportunity to do this mitzvah (good deed), but would not accept any payment for it.  See Ex 13 letter from Dr. David Simai.  This action speaks volumes for Ari's positive character because not only did  he take a health risk that other professionals had chosen against taking, but also performed the bris free of charge.  Those are the kinds of selfless acts that are rare to find in others.

Ari, the ever-concerned neighbor, noticed that the sidewalks and roadways in his neighborhood needed resurfacing and repair.  He single-handedly started a petition to obtain funding for this project and formed a group of 18 other concerned citizens.  In 2015,the Five Towns Beautification and Safety Improvement Committee was formed.  It took a long time to obtain the local officials' attention to this problem, but with patience and tenacity, Ari kept at it for the sake of the neighborhood.  See the attached newspaper articles at Ex. 14

Ari and his ex-wife have been active in numerous campaigns and functions meaningful to them. Specifically, they have opened their home numerous times for charity and fund-raising activities over the past many years. Two most recent examples of many, are a fundraiser for CAHAL, a special-needs school in the community, in February 2017, and a similar event for

Hasidic Midrasha in  September 2018.  See Ex. 15

Tammy Izraelov was a receptionist at Dr. Weinreb's practice.  One day during a lunch break, Tammy shared with her fellow staff members that she and her husband had made the painful decision to move her twin boys from a yeshiva private school to a NYC public school due to financial limitations.  The very next day,  Ari informed Tammy that she should not move her sons to public school and from that moment on he would be paying their tuition at the yeshiva.  Every August over the next four years, Ari would hand Tammy an envelope with ten post-dated checks made out to her sons' school to cover that year's tuition.  Ari did this without expecting anything in return; he did this because he wanted to see two Jewish boys get a religious education.  Certainly, these are not the acts of an evil person.  See Ex. 4

**Ari's Illness and Addiction**

Sex Addiction, or as the World Health Organization labels Compulsive Sexual Behavior Disorder[2], is described as a compulsive need to perform sexual acts to achieve the kind of 'fix'

---

[2] Compulsive Sexual Behavior Disorder (CSBD): The World Health Organization (WHO) defines CSBD in the International Classification of Diseases as follows:
- An impulse control disorder, characterized by a "persistent pattern of failure to control intense, repetitive sexual urges and behaviors" where:
(1) The person devotes excessive time to their repetitive sexual behaviors to the point of neglecting health, personal care, interests, and responsibilities. Dr. Weinreb was repetitively checking Grindr and spending hours reviewing profiles, communicating with potential mates, meeting for brief sexual encounters in odd hours of the day, neglecting to come home after work, and was dysfunctional/not present for his former spouse to the point of reaching out on several occasions to receive mental health assistance.
(2) The person experiences diminished control, manifested by multiple unsuccessful efforts to reduce sexual behavior.
(3) The person displays continues sexual activity despite adverse consequences.
(4) The person continues to engage in sexual behaviors even when little or no satisfaction is derived.
(5) The person experiences significant distress or impairment across life domains or important areas of functioning.
The five-factor model of the CSBD-19  (control, salience, relapse, dissatisfaction, and negative consequences) has been applied to Dr. Weinreb's presentation and has been supportive of the above diagnosis.

that a person with alcohol use disorder gets from a drink or someone with opiate use disorder gets from taking pills. Sex addiction (the compulsive sexual behavior described here), should not be confused with disorders such as pedophilia.  Like drug or alcohol dependence, it has the potential to negatively impact a person's physical and mental health, personal relationships, quality of life, and safety. It is believed that a person with sex addiction will seek out multiple sex partners, though this in itself is not necessarily a sign of a disorder. Some report that it may manifest itself as a compulsive need to masturbate, view pornography, or be in sexually stimulating situations.  A person with sex addiction may significantly alter their life and activities in order to perform sexual acts multiple times a day and are reportedly unable to control their behavior, despite severe negative consequences.

Ari is a sex addict. He has been diagnosed by Dr. Gaines, Dr. Nudman and Dr. Lewenstein as such, and more importantly he has "self-diagnosed" himself and come to this realization on his own.  It is only by accepting and admitting that one has a problem with sexual acting out (a self-diagnosis) that one is able to start the recovery process.  Ari's addiction took the form of compulsively seeking out men for the purpose of having sex.  Ari would meet strangers on gay hook up apps, have sex with them, get his 'fix' and then go home to his other life as a father, husband, physician, community activist and all-around good guy.  He did so compulsively because he could not stop.  He was powerless over the addiction that clouded his ability to choose right from wrong.  He lost control over his lust for men, no longer had the power of choice and was simply not free to stop.

Ari has spent the adult portion of his life trying to process his sexuality and its incongruity with his religious community's standards and values. His inability to merge his two opposing passions has led him to keep this aspect of his life a secret.  Dr. K. Drorit Gaines, a noted

psychologist and neuropsychologist, has examined Ari extensively.  Her curriculum vitae and

findings are attached as Ex 16.  Dr. Gaines noted that Ari's inability to comport his homosexuality

with his orthodox Jewish upbringing led him to seek sex compulsively.  She notes:

> Psychological evaluation and review of records suggests that Dr. Weinreb struggled
> with his sexual orientation identity as a homosexual since youth and has attempted
> to live a full heterosexual life, which resulted in utilizing online meet-up
> applications to meet his sexual needs. This has become a compulsive behavior to
> him, placing him in risky circumstances that resulted in poor decision-making,
> failure to stop his compulsive behaviors, and engaging in sexual activities with
> two minors. (Gaines report page 26)

Although Dr. Gaines and Ari only met for a few sessions, her report is a raw and at times

graphic picture of Ari's disease and how it manifested itself in an otherwise healthy, competent

and socially appropriate adult male.  The disease of addiction is ugly; how sex addicts act and react

is at times ugly as well.  It is only through intensive therapy and 12 step work that the addict can

see that their past was clouded with inappropriate and delusional thinking.   Ari has had such

retrospection and is fully committed to leaving his addict-self behind and living in the present.

Dr. Gaines performed many psychological tests on Ari and has concluded that:

> Dr. Weinreb's neuropsychological testing results suggest intact effort on test
> performance. Dr. Weinreb completed all measures provided to him, was
> cooperative, and forthcoming. Dr. Weinreb's self-report of symptoms, history, and
> psychological testing suggest that he is cognitively intact but suffers from identity
> problems related to same-sex attraction, history of compulsive sexual behavior, and
> a trauma-related disorder as a result of psychologically abusive and opposing
> parenting styles that went unrecognized and untreated during his lifetime. Gaines
> report page 25.
> …
> Dr. Weinreb's history of behavior at the time of his offense meets the diagnostic
> description of symptoms of addiction. Gaines report page 22.
> …
> Evaluation results do not support the presence of pedophilia, antisocial personality
> disorder, or psychopathy. Gaines report page 26.
>
> Dr. Weinreb's history and account of his colleagues, patients, friends, and family,
> including lack of criminal history demonstrate that he does not significantly violate

the right of others, as understood in this chapter. Additionally, his homosexual orientation is not a significant conflict with societal norms (albeit they are in significant conflict with his own cultural norms) or present conflict with authority figures. While he has committed crimes that violated the rights of others and broke social norms, those were committed when Dr. Weinreb exhibited signs of addiction. Therefore, poor impulse control was a result of addiction, not an independent disorder, as the diagnostic criteria requires. Gaines report page 21.

…

Dr. Weinreb is at a low risk of harm to others at this present time. He is a first-time offender with a compulsion disorder which had neither been properly diagnosed nor specifically treated prior to his arrest. Gaines report page 26.

**The Crime**

Ari's addiction took the form of compulsively seeking out men with whom to have sex. Ari would meet strangers on gay hook up apps. These apps were limited to adults only. Ari has never gone on a website or app where underage persons are known to frequent. He sought out people on websites or apps that were open to adults only for consensual sex purposes.

Ari met JD1 in March 2019 through an adult web app called Grindr, a 'gay hook-up' app. JD1 was on the app and represented himself as being 18, and Ari had no reason to believe otherwise. Between March 2019 and May 2019, although defendant and victim met infrequently, they developed a kinship and multiple text messages were exchanged in wherein mutual affection was shared.

In May 2019, it became known to Ari that JD1 was in fact younger than 18 years of age. Both he and JD1 agreed to discontinue the relationship. Still, within a short time, Ari and JD1 resumed texting each other. Despite Ari knowing the victim's age, in text message communication, Ari persuaded JD1 to meet with him again.  Ari's illness influenced him to keep messaging this minor because  the disease made him powerless over his lust. For this, he now has tremendous remorse.

In regard to JD2, as mentioned in the PSR, Ari is not being charged with any crime. Still, Ari wishes the Court to know that he did engage one time in inappropriate contact with JD2. Ari is not hiding this from the Court, and in fact, in a moment of raw honesty and remorse, perhaps even a cry for help - he revealed the existence of JD2 to the FBI at the time of his arrest. Ari met JD2 on the same Grindr app that he met JD1. The app was limited to adults 18 years and older and JD2 represented himself as being 18 years old. Ari did not persuade, induce, entice or coerce JD2 to meet and he is not facing any criminal charges in regard to JD2. His meeting with JD2 occurred between his last meeting with JD1 and his ultimate arrest. He has tremendous remorse that his addiction led him down that dark path a second time.

Although at some point Ari did come to know JD1 and JD2's true ages, his addiction took over and he was in such a frenzy state at that moment that it did not matter that both were underage. His disease took over his reasoning. This is the type of powerlessness that only an addict and those who study addiction can understand.

**Ari's Diagnosis, Intensive Treatment and Ongoing Recovery**

Ari is not an evil person – Ari is an ill person.  Ari has the disease of addiction.  An evil person could not possibly achieve the level of success that Ari has achieved in his lifetime, could not be described so kindly by his friends and colleagues, even after his arrest, and could not be so charitable and empathetic.  The only possible explanation for Ari's crime is that it was executed in addiction.

There is a saying, "it takes one to know one." Isaac Zucker, a disbarred, ex-convict and recovering addict wrote a letter on behalf of Ari.  When the news came out that Ari was arrested, Isaac reached out to him to let him know that he was not alone.  Isaac too suffers with addiction

and has made a remarkable recovery through the 12-step program.  Isaac can give the Court insight into the thinking of an addict from his personal perspective, as when he writes:  "There is no thinking or thought process - - if an addict is capable of thinking clearly, there would be no such thing as addiction.  The only "thought" that goes through an addict's mind is "how do I get what I want."  More importantly, Isaac, who has spent 13 months in a correctional facility with child molesters, pedophiles and other sex offenders  can attest to the fact that Ari is not a pedophile. See Ex. 17

The initial months after Ari's arrest were emotionally difficult to say the least.  In one swooping motion, everything he ever had and knew was gone. As Ari writes in his meditation, "Admittedly, the first 3 months or so after my arrest was a time of paralysis, anger and fear. I was far from ready to process what had happened, how much I had hurt others, and I certainly was not ready and able to even begin to honestly look back at my life thus far. Since then, I have slowly started to try to understand what had led me to bring so much damage and pain to so many people." Ex. 1

Following weeks of crying and remorse that led Ari to believe that he didn't deserve to live, Ari began to regain his composure and with a new drive to grow from his experience, he has been working at full speed to take corrective measures.  Finally able to admit that he was powerless over lust and sexual acting out and realizing he can no longer deny his homosexuality, he took the first step to his recovery. Ari was at first assigned by his PO to a therapist, Christina Minerva-Bertin LMHC, based on a geographic location.  Ari desperately wanted to work with her on his sexual issues, but according to her protocol, as he had not yet pleaded guilty, she declined to make it part of his therapy plan.  Ari, on his own volition, sought out a therapist equipped to deal with sex addiction and sexual identity issues and transferred to Dr. Lewenstein.  A little over one year

ago, Ari began working with Dr. Lewenstein, meeting with him twice weekly for one hour and many times for longer intensive sessions. It was during these sessions that Ari finally began to really tackle his disease of sex addiction.

The remarkable progress he has made is indisputable, as discussed by professionals who have treated him, fellow addicts in recovery, and by friends, family and rabbis who have finally observed an introspective Ari, highly attuned to his personal flaws and deeply committed to becoming a better person.  But even more significant than these observations,  is Ari's own deeply personal meditation to the Court on sickness and recovery that speaks most powerfully to his progress.

Dr. Florian Lewenstein, who specializes in sexual issues and understands the culture and community that Ari comes from, began treating Ari on May 24, 2020.   He identified Ari as a sex addict and is pleased that Ari is in the 12-Step fellowship of Sexaholics Anonymous (SA).  Dr. Lewenstein notes that Ari now responds to stresses in a healthier manner, with thought and not impulsivity.  Dr. Lewenstein has been consistently treating Ari twice weekly and has made the following conclusion:

> Dr. Weinreb has been on this favorable trajectory because he has immersed himself in recovery through therapy and commitment to a 12-Step program. His prognosis is surprisingly good if he is able to continue these activities. If he is allowed to continue therapy and working on recovery in his 12-Step circle, the likelihood for a full recovery and leading a productive and useful life is greatly enhanced. In twenty-seven years working with trauma and compulsive behaviors, there have been many frustrations due to the difficulty those issues present. Dr. Weinreb's is one of those cases that provide the gratification and reinforcement that makes this very challenging work so worthwhile. I feel as certain as I can allow myself that he is on the way to a full recovery and a useful, productive life. It would be disheartening for me as a clinician if Dr. Weinreb's progress in therapy or 12-Step involvement were to be disrupted. See Ex. 18

Since July 16, 2020 Ari has been under the care of Dr. Alfredo Nudman, a psychiatrist.  Dr.

23

Nudman has diagnosed Ari with Major Depression, Anxiety Disorder[3] and Impulse Disorder and notes that Ari is compliant with his medications, therapy and attending SA meetings and has consistently shown a great commitment to his recovery and stability. Ex. 19.  He notes:

> Dr. Weinreb has made significant progress. His ability to regulate and control his impulses seems significantly increased. His capacity for decision making seems improved as well.  He shows remorse and guilt about his past actions and is able to verbalize how he plans to prevent falling into negative behaviors in the future.  He is actively working on setting things up in his life to that effect, including building a healthy structure for his days including prayer, study and talking to positive people in his life.

Mental health professionals are not the only ones to have recognized Ari's genuine commitment to getting better.  Thirteen participants of SA have written letters testifying to Ari's involvement in the program, with many noting his deep commitment to full participation, both for his own success in recovery and for others participating in the program.  For example, Yitzchok Rabinowitz, Ari's sponsor[4] in SA, writes: "he has done the work of the 12 steps and continues to do so sincerely and has since been a great source of help for many others. He helps meetings run, offers to chair meetings, gets new meetings started, sponsors people and reaches out to those who struggle, to name a few.  In short Ari is a source of strength for many in the SA rooms".

Shalom S[5] is one of Ari's sponsees.  The fact that Ari sponsors others in SA is a testament to the progress Ari has made in the program. Shalom S. notes that Ari's recovery is based on a solid foundation, that Ari is humble and committed to doing his 12-step work.

---

[3] Both acute diagnoses due to his sudden life crashing, not chronic conditions and both have resolved.

[4] A Sponsor is a person who familiarizes themselves with the 12-Step approach and works their way through the steps and is willing to help guide newcomers and those looking for extra support. A sponsor, then, does what they can with their knowledge and experience to help the newcomer, or "sponsee" get sober and stay sober through the 12-Step program. A sponsor is a sexaholic who has made some progress in the recovery program, shares that experience on a continuous, individual basis with another sexaholic who is attempting to attain or maintain sobriety through SA.

[5] Ari's fellow recoverees are sometimes referred to by their first names in this submission in light of the extraordinary privacy concerns at issue.

Meir W., a longstanding member of SA, writes: "rarely have I seen someone embrace recovery and healing and change the way Aaron has.  He has owned his wrongs and issues and has been working diligently on changing himself for the good.  He's made tremendous progress in a short amount of time".  Shalom L. considers Ari a role model and notes that "he chairs many meetings, becoming one of the most active members of the group."  Daniel Sobin wants the Court to "see Aaron for what he is, a wholly good person who had an unwanted sickness, striving to get better, rather than as a bad person trying to become good."  Truer words could not have been uttered.  Ari is a kind, loving, charitable medical professional – a wholly good person – with a disease, who just wants to keep getting better.

Ari's friends and support network from recovery meetings on Zoom and weekly live meetings have similarly come to admire Ari's progress and to rely on him in their own recoveries. Howie Lebowitz notes that Ari "is a kind, caring and deeply good person. He is a person with tremendous values. He loves people and is loved by all.  He is compassionate. He is rigorously honest and truthful." Meir F. shows the Court how Ari is dedicated to recovery and successful in transforming his life.  Another sponsee of Ari is Rony Samuels who credits Ari with saving his life! They speak 45 minutes a day working the steps together.

Brad M., a Roman Catholic priest from Chicago, saw something in Ari that he wanted for his own recovery and asked that Ari sponsor him and work the steps with him.  The fact that two recovering addicts from different cities, different religions and different walks of life can come together in a fellowship and help each other through their struggles speaks volumes for the SA program and the men who attend.  Brad M. writes:

> Although I have known Ari only a relatively short time, I am continually inspired and encouraged by his dedication to nearly nineteen months of sexual sobriety according to SA principles.  Ari's coming to terms with his own addiction and his dedication to the SA fellowship testify to his

commitment to live life as a changed man.  He has shared openly and honestly with me about his past behavior and the circumstances that led to his arrest, but I have witnessed his leadership in SA and wish to acknowledge the respect that I and many others have for him as he now serves to help us reach the same goals of emotional sobriety, peace, and genuine serenity he clearly enjoys.

Steve Siegel, one of the longest sober members of the fellowship, with over 29 years of sobriety, indicates how Ari is serious about his recovery and is an integral part of the SA fellowship.  "Ari has been a major force in developing and maintaining the 2 weekly zoom meetings and serves as the Meeting Secretary."

One major theme throughout all of the letters from Ari's co-addicts is that Ari has accepted responsibility for his actions and is deeply remorseful.  See Ex 20

**Ari's Life Today**

Ari has used the last 20 months to practice and to put in place an entirely new way of life, one that is free from lust and addictive thinking, one day at a time.  Ari is extremely appreciative to this Court for giving him this opportunity.  In SA, Ari is taught to make a daily gratitude list and this Court is consistently on top of the list for allowing Ari the time to recover from sex addiction.  With his newfound  clarity regarding his past behaviors and where his illness had taken him to, Ari is also grateful that he has not been killed, that his family is safe, that he discovered his illness, and has begun working on a daily reprieve. He looks forward to a whole new life free from the addiction to lust and sex. Ari has informed the Court that he has been sexually sober (no masturbation or sex with others) since his arrest 20 months earlier.

Ari's transformation has likewise been apparent to his long-time friends and family as well as rabbis and study partners.  Today Ari's life is full of recovery, studying Jewish subjects and prayer and meditation.  Five days a week, three different rabbis come to visit and learn with Ari, and each have submitted letters to the Court about the time they spend with Ari.  Ari spends his

time with rabbis, Torah and recovery, not idling his time away stewing in resentment.

The first of the three rabbis, Rabbi Shaya Kivelevitz, recalls about his first contact with Ari: "He was seeking a new spiritual way, devoid of his own influence, to re-begin. Although I have never met Aaron before, I committed to him and I have since spent the last 16 months studying Torah daily with his beautiful, precious Jewish soul." Similarly, the second rabbi who learns with Ari, Rabbi Aaron Kagan, reflecting on his first interaction states: "When I replied to the originator of the request, Aaron Weinreb - although I did not know his name at the time - informed me that he was unable to leave the house as he was under house arrest. He did not provide details but said, 'I did something terrible and disgusting which I am embarrassed of, but as I am a religious Jew, I would like to study Torah."   The third rabbi, Rabbi Shaya Heimlich, writes: "Seeing the sincerity of this person, I started befriending him and studying with him all that I knew about what the Jewish holy books say about repenting. As I got to know Ari, I discovered a beautiful person who struggled his entire life with deep issues about his sexuality, and despite this fact, he had tried in every way to live his life with the value of the Torah to the fullest of his ability."

Rabbi Moshe Weinberger, Ari's congregational rabbi notes that he is "personally aware of all the efforts that Aaron has made this past year, including his 12-step addiction work and therapy, and his spiritual growth through the study of Torah. I admire his dedication and resolve." Ex. 21

**Ari is Deeply Remorseful**

Ari is deeply remorseful for his actions, which in addition to his crime, his years of cheating on his wife and for not being the husband he was supposed to be, living a lie, and losing the trust he had as a community leader and a friend to some.  He has had an awakening that he had been lying to himself; he had been denying to himself all the hurt he was causing to his loved ones.

His relative Dovi Scheiner writes:

His embrace of personal growth with humility and sincerity has been meaningful to me to witness. He has absorbed the damage his behavior has caused and is determined to leave his past in the past. He knows he can never fully clear his name but still wants to spend his days performing acts of kindness and healing for the sake of the community and his own sake. See, e.g., Exhibit 22. (Letters from Family), Letter from Dovi Scheiner.

In Ari's meditation (Ex 1), he speaks about remorse, not just to his victims but to his wife, children, colleagues, community and patients. He is not just remorseful for the crime, but for a lifetime of pain, although previously unbeknownst to them.

Quoting from Ari's meditation in regards to his victims and his victim's family:

I have hurt two underage victims and their families. I have engaged in sexual acts with them, and given their young age they did not have the ability to understand the ramifications of these actions, and to willingly consent. I make no excuses. I take full responsibility for my actions and any ramifications my actions have caused them. As a father, I can understand the pain I have brought to them and their parents. I sincerely pray that they be able to grow into healthy adults and still meet their full potential.

I have no ability to make amends to them in person. If they were to ever read this I would want them to know that I harmed them by my actions and for that I am sorry. I would ask them how it affected them and apologize for that and I would ask them how I could make it up to them and follow their suggestions. Ex.1

Quoting again, in relation to his now ex-wife, after 22 years of marriage:

I have robbed my ex-wife, not only of a husband (flawed and all,) but I have stolen from her what should have rightfully been hers, a true sense of self. By my actions, I have denied her the basic principle of marriage, that of a trusting partnership. Her self-dignity has been robbed from her by me, her husband, who was supposed to have been her protectorate of everything that is basic to her. Ex.1

True to 12-step practice, Ari has gone through the arduous process of making amends, per steps eight and nine. Under the direction of his sponsor, he had created a comprehensive list of everyone he ever hurt and set out to make amends. Some declined to speak with him and Ari

accepts their decisions. Those who were willing to communicate, Ari was forthcoming about the harm he caused them, asked for their forgiveness, inquired if there were any other harms that he caused them of which he was unaware, and how he could make amends.  He then just listened for the answers so he can learn how to properly make amends to those he had harmed. With regard to previous sex partners, many remain anonymous, and the best Ari can do is a living amends by dedicating himself to living in a new and healthy way.

An example of an amends that Ari has drafted is an email attached as Ex. 23.  On April 26, 2021, he wrote to the Senior Vice President of NYU Langone Health and copied other executives, supervisors and colleagues about how ashamed he is of his actions and apologized for the shame that he brought onto the entire NYU institution.  He remorsefully expresses that he alone made terrible choices and accepts full responsibility for those choices.  He acknowledged the pain and shame that he has brought to the hospital, his patients and the entire NYU name.  This email is another demonstration that Ari is trying his best to make amends for his past transgressions and not speak disingenuously.   Ari truly wishes he can make things right with the people and institutions that he has harmed.  He is fully prepared to spend as much time as needed in making those amends.

## ACCEPTANCE OF RESPONSIBILITY

As part of Ari's recovery, he has accepted responsibility for his actions.

> Although I have now come to understand some of the outside factors that may have contributed to the molding of the person that I have become, I absolutely do not seek to pass the blame on to anyone else, or to look back on any personal turmoil I may have endured, as an excuse for my actions and decisions. They were my decisions and actions; I solely must and do own them. And the fact that my acting out has never brought me any true happiness, certainly doesn't make me less guilty for it.  Ex 1

Ari  maintains a rigorous daily schedule. His day is divided between working on

addiction recovery through numerous 12-step meetings, reading recovery literature and engaging with his sponsor, sponsees and other fellowship members. The rest of his day is engrossed in Jewish religious studies, touching on all different subjects but with a strong emphasis on repentance and self-improvement. Ari is dedicated to his singular goal of full rehabilitation. To that end, he  attends two weekly sessions with his therapist and remains under the care of a psychiatrist.

Ari has a realistic understanding of the depth of the hurt he has caused to so many. As he writes,

> Truly, the damage I have caused to others is insurmountable and unbearable at times. I must painfully accept the fact, that many of those that I have hurt, for now or forever, no longer want me as a part of their lives. I must remember that, especially in regard to my ex-wife and my older children, though I was certainly the cause of their problem, that does not give me the right to be a part of their solution. If I truly want to be helpful to them, if I truly want to do their will, then the only thing I could do for now is respect their wishes to give them the space for now that they have asked for. I have far from yet accepted this painful, but necessary truth. Ex 1

As part of taking responsibility, Ari has turned over 96% of his assets to his wife. He went from being wealthy to poor.  He has endured his wife's refusal to allow him to see his children for one year, and even now, he is only allowed four hours with his children as per his ex-wife's insistence that he be supervised by an outside party even though his bail conditions permit him unrestricted access to his children.  Ari humbly accepts everything as due him and does not challenge his ex-wife's unfair terms for visitation.

This Court is aware that his now ex-wife filed a false police report against him regarding identity theft. Ari never told anyone about this false report. He never complained to anyone about his mistreatment and fear of losing his release status. Instead, he appeared before Your Honor humbly knowing the truth would come out and he would be found absolutely innocent of this false

claim.  Ari did not even ask his matrimonial lawyer to bring this issue to his wife's lawyer; he just humbly accepted it as penance for the pain he caused his wife.

Ari is handling his divorce with responsibility, humility and maturity. Ari's matrimonial attorney, Igor Meystelman, has a somewhat unique perspective of Ari.  As Ari's attorney, Meystelman was privy to many confidential conversations about his client's personal life and history.  What impressed him the most was Ari's honesty and that all Ari wanted to do "was to focus on acknowledging his wrongdoing, taking ownership of it, and focusing on healing his relationship with the children." Ari was never resentful; he was accepting of the situation and is committed to making a lifelong amends to his children and ex-wife.  See Ex. 24

Letters from other SA members, Pragnesh Surti and David Burns (Ex. 25) also attest to the serenity and acceptance[6] that Ari has shown when dealing with his divorce.

**Pre Sentence Report (PSR)**

The PSR lists two early instances in which they believed Ari was not in compliance with the conditions of his release. (PSR ¶¶4-5) Within the first two weeks of Ari's arrest, Ari used internet capable devices through a third party- namely his father to search for prayer services and his sister-in-law to look up information about his arrest.  Ari admitted to the supervising Pretrial Services Officer that he did indeed ask others to look up information on a computer. Ari was unaware that requesting a third party to search the internet was a violation of his release conditions

---

[6] Acceptance is a 12-Step concept.  The Serenity Prayer begins with – "God grant me the serenity to accept the thing I cannot change". Additionally, Dr. Paul O. who wrote the Acceptance chapter of Alcoholics Anonymous (a.k.a. The Big Book) included a prayer that reads as follows: "And **acceptance is the answer to** *all* **my problems today.** When I am disturbed, it is because I find some person, place, thing or situation - some fact of my life - unacceptable to me. I can find no serenity until I accept that person, place, thing or situation as being exactly the way it is supposed to be at this moment. Nothing, absolutely nothing, happens in God's world by mistake. Until I could accept my (sexaholism), I could not stay sober; unless I accept life completely on life's terms, I cannot be happy. I need to concentrate not so much on what needs to be changed in the world as on what needs to be changed in me and my attitudes." Ari through 12-Step recovery has been living one day at a time and accepting everything that he cannot change.

as third party conduct is not specifically delineated in the written conditions of his release.  He thanked his PO for the information, was properly admonished, and never did it again. See bail conditions (page 3) Ex. 26

Also referenced in the PSR is the incident wherein Ari's now ex-wife, who is understandably angry with Ari, filed a false police report against him alleging identity theft and which necessitated his appearance before Your Honor.  This Court was unable to obtain the audio tape of the phone call with the bank and there was no further action taken regarding this issue, both at the local police level or with this Court.

Ari was in fact out of compliance when he used his father's smartphone, an unmonitored device, to video chat with his children.  Although he was scheduled to have a weekly video conference with his younger children as set up by his ex-wife, she began blocking her WhatsApp video function. Ari desperately wanted to see and speak with his children, rationalizing that it was just a call to his kids and, not thinking about the use of an unmonitored device, made the video call in an effort to maintain some semblance of contact with his children who he dearly loves.  Ari apologizes to the Court for this violation.

**The Plea Agreement and Guilty Plea**

On February 26, 2021 Ari waived indictment and pleaded guilty to a one count superseding information charging a violation of 18 U.S.C. 2422(a), which prohibits "knowingly and intentionally persuade, induce, entice and coerce an individual, to wit: John Doe 1, an individual whose identity is known to the United States Attorney, to travel in foreign commerce, to engage in sexual activity for which a person can be charged with a criminal offense…"  This statute, virtually never charged in this district, except as an addition to more serious sex with a minor charges, represents the least severe disposition available for an individual who has had sex with a

minor.

The agreement to which Ari entered his plea of guilty Ex.27 ("Plea Agreement") further reveals the Government's view that the conduct here is far less severe than what is ordinarily charged in more serious sex crimes against minors.  The Government took the extraordinary step of stipulating in the Plea Agreement itself that, based on the manner in which the Sentencing Guidelines are calculated, a below Guideline sentence would be appropriate.  In particular, the Government represented in the Plea Agreement that in their opinion a sentence in the range of 60-87 months is appropriate and consistent with the one count plead guilty to in this case.

**Argument and 3553(a) Factors**

18 U.S.C. 3553(a) allows a sentencing court to consider a defendant in all of his unique persona. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Gall v. United States, 552 U.S. 38, 52 (2007) (quoting Koon v. United States, 518 U.S. 81, 113 (1996)). As stated: "the punishment should fit the offender and not merely the crime," Pepper v. United States, 562 U.S. 476, 488 (2011)

Ari's offense represents aberrational conduct outside the course of an otherwise upstanding and exemplary life.  Ari has devoted so much time, effort, professionalism and money to help others. Whether as a physician, community member, friend, and even now as a sponsor to fellow recovering addicts, Ari has shown himself to be an extremely empathetic and charitable individual.

In addition, there are several aspects of this case that call out for the Court's attention when deciding on a proper sentence:

*First, this crime is a product of an illness* - One can debate labels, quibble over particulars, but no one can dispute that Ari's operatic self-destruction, of which the instant case has been but the final act, was born of a deep sickness.  Ari was a well-respected  physician who has saved lives and helped women give birth to babies. He was a person who was known for his charity, who offered his time and money to help those who were less fortunate than himself.  Ari was  a beloved and respected spouse and father. He was a person who cared deeply for his community,  a dedicated professional whose former patients have written so many letters of support and whose former colleagues, doctors, nurses and Physician Assistants tell this Honorable Court how much they cherished Ari.  The only explanation for someone as beneficent as Ari to have also committed such a crime is to understand that Ari was ill.  One does not have to be a psychologist to know that these are not the actions of a healthy person, such that every mental health professional who has examined Ari in the wake of this criminal activity has arrived at the same conclusion.

*Second, a confluence of factors and circumstances preceded Ari's crime of persuading a minor* - Ari was never looking to commit a crime. Ari did not intend to engage with a minor. He met JD1 through an adult web app wherein the rules explicitly require that all participants be 18 years old or over. Ari and JD1 developed a relationship over approximately 3 months during which Ari was under the impression that JD1 was of legal age. When Ari discovered JD1's true age, a confluence of factors clouded Ari's good judgement. Ari, as an addict desperate for connection and delusional that he was in a relationship with JD1, and needing his immediate fix, fell into a downward spiral for which consequences he will forever endure. The addiction took over Ari's ability to think clearly and he continued to persuade JD1 to meet again. For this desperate lack of clarity,  he now has tremendous remorse. His single meeting with JD2 was through the same adult website.

*Third, Ari is not a predator* - Based on many sessions with Ari's therapist, Dr. Florian Lewenstein, it is clear that Ari's involvement with a minor that led to his arrest is coincidental to his sexual issues.  He is not a pedophile, and he has never had an interest in, or knowingly sought out, minor people as sexual partners.  He does not pose a threat to children. Ari was not looking to engage with a minor and believed them to be adults.  After coming to know the true age of his victims, he engaged with them as a weak man, at the bottom of a self-destructive spiral. He engaged with them not because of their age but in spite of it. Furthermore, Dr. Gaines has assured this Court that Ari is not a pedophile.

*Fourth, Ari hit rock bottom and is now a changed man* - Through self- awareness, intensive psychotherapy and the fellowship of Sexaholics Anonymous, Ari has become the person he should have always been.  He now fully understands that he was suffering from sex addiction and has worked so hard to overcome this with very positive results.

*Fifth, Ari has deep remorse* – Not only for the crime he committed but also for the life he led and for the people he hurt along the way.  In his letter to the Court, Ari speaks of remorse, primarily to his victims and also to his ex-wife, children, colleagues, friends and everyone who was in his circle. Of note, his heartful remorse to his now ex-wife is not so much for having been caught or arrested,  but rather for the insight and understanding he now has of how he failed her as a proper spouse during their 22 years of marriage.

*Sixth, Ari is taking responsibility, not just for the crime, but a whole new way of living* - Ari understands that he cannot simply resolve to never engage in criminal behavior again. Rather, he is committed to change his lifestyle to engage in intimate relationships only within the context of a healthy, loving relationship. This is the focus of his therapy work and his spiritual work with members of his community. His goal is to be fully rehabilitated. When all his current legal issues

35

are resolved, he intends to genuinely lead the life that for years he was pretending to live. At present this is his most important goal.

*Seventh, Ari has much good to give back to the community* – Ari is a physician by training, a person who naturally wants to help others.  Ari is hopeful that one day he can still contribute to the field of Obstetrics and Gynecology even if it is no longer in the role of a physician.

Ari truly wants to continue to help others in any way he can. Ari is an active member of his SA fellowship, has taken a leadership role within the group and in addition to his four sponsees, has been a source of inspiration and an example of true sobriety to the entire SA fellowship.  Ari's natural caring attitude is perfectly adaptive to any field where he can give of himself to improve someone's life.  Ari is willing to make a lifetime career out of helping others struggling with addiction.

Quote From Ari's meditation:

> I now realize that I am far from alone or unique in my struggle with unwanted same-sex attraction and sexual compulsion, especially and specifically within my own religiously restrictive Orthodox Jewish community. As much as I would love to return to practicing again as an OB-GYN physician, admittedly it is probably not a reality.  In truth, I have become inspired about the world of recovery and I hope to share my own experiences *(and if given the opportunity to enroll in a degree program, the professional knowledge I will obtain)* to help others. I hope to make whatever small impact I can, even if it is limited to no more than one less addict, one less destroyed family, and one less victim of a sexual crime.. Ex 1

**RELEVANT SENTENCING FACTORS**

It is respectfully submitted that the Court sentence Ari to a sentence that is appropriate in light of the unique facts of this case as well as how those facts fit within the purposes of incarceration that is sufficient but not greater than necessary and fully satisfies the objectives of 18 U.S.C. § 3553(a).

It is respectfully submitted that the Court sentence Ari to a sentence that is sufficient but not greater than necessary and fully satisfies the objectives of 18 U.S.C. § 3553(a).  Such sentence should be appropriate in light of the unique facts of this case as well as how those facts fit within the purposes of incarceration.

**Punishment**.

The Court's sentence should be sufficient, but not greater than necessary, to achieve the sentencing goals of just punishment. First, it should restrict Ari's liberty but also commit him to meaningful continued recovery. Second, the Court should take notice that Ari has already been severely punished for what he did. He has been publicly humiliated, destroyed his 22-year marriage and a relationship with some of his children, and lost his job as a doctor.

**Deterrence.**

In fashioning an appropriate sentence, the Court should consider whether a sentence will sufficiently deter the defendant from committing further crimes and the public at large from committing similar offenses. See 18 U.S.C. § 3553(a)(2)(B)–(C).

The "likelihood that [a defendant] will engage in future criminal conduct" is "a central factor that district courts must assess when imposing sentence." Pepper, 562 U.S. 476 at 492.

In this regard, how Ari came to meet his victims as well as what the experts have stated is of critical relevance. As noted above, Ari had never, ever sought out a minor nor was he seeking one at the time of engagement with JD1. In addition, Dr. Gaines and Dr Lewenstein have told this court that Ari is not a pedophile. Dr. Lewenstein went so far as to say that patients like Ari restore his faith in recovery and he believes that Ari will have a full recovery and lead a productive and useful life.

The experts agree that there is no likelihood of Ari reoffending. In this case, there is simply no risk that Ari will recidivate.

**Reform**

The sentence should ensure that Ari reforms his past ways.  As has been evidenced in this submission, Ari has changed his entire lifestyle to ensure that he is reformed.  He primarily concentrates on his recovery and his secondary focus is on his Jewish studies.  Not much else matters to Ari.  Recovery comes first!  With that attitude it should be clear that Ari is a reformed person who never again wants to relapse to his old ways.  He has experienced rock bottom and would never risk returning to that deprivation again .

**Safety**

The sentence should ensure the safety of others, especially in this case where the Court must protect the interest of minors.  Three medical experts have opined that Ari is a safe person to be around and would not recidivate.  The community feels safe around Ari and that speaks volumes.  His patients say that given the choice, in spite of everything they know, they would still want to use him as their doctor. Even his patients feel safe around him.

In addition, as stated above, Ari never sought to engage with a minor in the first place.

**Conclusion**

Ari understands that ultimately the sentence is up to this Honorable Court and he will humbly accept the sentence of the Court.  Ari begs that you see him now as a remorseful individual who suffers from the disease of sex addiction and is committed to recovery.

"A country which is secure in its institutions, confident in its laws should not be ashamed of the concept of mercy. As the greatest of poets have said 'mercy is the mightiest in the mightiest.' It becomes the throned monarch better than his crown." Justice Kennedy – United States Supreme Court (2003 ABA speech).

Respectfully Submitted,

Saul Bienenfeld

/s

Counsel for Aaron Ari Weinreb