1

```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
 2

 3    - - - - - - - - - - - - - X

 4   UNITED STATES OF AMERICA,    :   20-CR-00006(BMC)

 5           Plaintiff ,          :
                                      United States Courthouse
 6       -against-                :   Brooklyn, New York

 7   AARON WEINREB,               :
                                      February 26, 2021
 8           Defendant.           :   10:00 a.m.
      - - - - - - - - - - - - -   X
 9


10

                  TRANSCRIPT OF PLEADING BY VIDEO
11           BEFORE THE HONORABLE BRIAN M. COGAN
                  UNITED STATES DISTRICT JUDGE
12

13   APPEARANCES:

14

     For the Government:        SETH DuCHARME
15                              United States Attorney
                                BY: MICHAEL BUSHWACK,
16                              Assistant United States Attorney
                                271 Cadman Plaza East
17                              Brooklyn, New York

18
     For the Defendant:         FOLEY, GRIFFIN, JACOBSON, & FARIA,
19                              LLP
                                666 Old Country Road, Suite 305
20                              Garden City, NY 11530
                                BY: BRIAN J. GRIFFIN, ESQ.
21

22   Court Reporter:            Andronikh M. Barna
                                225 Cadman Plaza East
23                              Brooklyn, New York
                                (718) 613-2178
24

     Proceedings recorded by mechanical stenography, transcript
25   produced by computer-aided transcription.
```

2

1          THE CLERK:  United States vs. Weinreb.

2          Docket No. 20-CR-06.

3          Counsel, please state your appearances, starting

4    with the government.

5          MR. BUSHWACK:  For the United States,

6    Michael Bushwack.

7          Good morning, Your Honor.

8          THE COURT:  Good morning.

9          MR. GRIFFIN:  And for Mr. Weinreb, it's

10   Brian Griffin and Scott Gross.

11         Good morning, Your Honor.

12         Good morning to the government as well.

13         THE COURT:  Good morning.

14         Hang on one second.

15         Ah, I see you, Mr. Griffin.  Okay.  Good morning.

16         Okay.  And I see Mr. Weinreb on the line.  You're

17   there, Mr. Weinreb?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  All right.  So we are here for an entry

20   of plea on a superseding information.

21         Let me start with getting the basis for us to

22   proceed by video.

23         Let me first hear from the government.  What is the

24   basis for doing video today?

25         MR. BUSHWACK:  Your Honor, I believe the

3

1   Administrative Judge has issued several administrative orders,

2   one that is still currently in effect, finding that

3   appearances cannot be conducted in person without seriously

4   jeopardizing public health and safety.

5          Number two, it is my understanding that the

6   defendant, after consultation with counsel, has explicitly

7   consented to proceed via video today.

8          And I also have some specific findings for the plea

9   taking place today, if you would like me to go through those

10  as well.

11         THE COURT:  I am not sure what you have in mind.

12  But oh, I see what you mean.  Yes, do those now.  Let's do the

13  whole thing by video.

14         MR. BUSHWACK:  Sure.  And it's specific to this

15  case, Your Honor.  And I submit that this plea cannot be

16  further delayed without serious harm to the interests of

17  justice.  Specifically, the victims in this case are very

18  interested in finality in the defendant accepting

19  responsibility and concluding the guilt phase of the case.

20  Additionally, I submit to the Court that further delay will

21  prejudice the victims' ability to obtain restitution, which

22  includes, among other things, necessary medical treatment and

23  therapy.  So for those specific reasons, I submit that further

24  delay will prejudice this case and the victims and that we

25  should proceed in this fashion today.

4

1          THE COURT:  Okay.  Mr. Griffin, do you have anything

2     to add?

3          MR. GRIFFIN:  Thank you, Judge.  Yes.

4          First of all, of course we're prepared to consent

5     this morning, as outlined by Mr. Bushwack.  I have spoken with

6     Mr. Weinreb about his respective rights.  He wishes to move

7     forward this morning.  Of course, the Court is also aware

8     specifically the age of this case.  This is not a new case.

9     This is a case that has been pending for a period of time.

10    We've always asked for these adjournment requests, so I don't

11    put it on anyone but us, but by the same token I know as we

12    were approaching our last court dates the Court was getting

13    concerned that the interests of justice were not necessarily

14    in favor of continued adjournments, so I, of course, would

15    just remind the Court of that and the fact that we are looking

16    to move forward.

17         Additionally, Your Honor, the Court has probably

18    read the parameters of our plea agreement ahead of today's

19    plea agreement and is aware that the defense will not be

20    asking for a non-incarceratory sentence in this case and, as

21    such, Mr. Weinreb has certainly a significant and strong

22    interest in pushing this case forward so that he can begin

23    serving any incarceratory sentence that may occur.

24         He has five children.  He has two elderly parents.

25    All of the children will have milestones, obviously, that he

5

1   would like to attend to.  And, of course, his parents are in

2   their mid-70s.  His mom suffers from some significant medical

3   issues, and obviously the hope and the prayer is that

4   Mr. Weinreb will return to his parents at the end of this,

5   both of them being available, you know, to him.

6          I also would be remiss not to, by the way, thank the

7   courtroom deputy for allowing us to get this all together.

8   She was accepting our e-mails up until about 8:00 last night,

9   so thanks to the Court for this.

10          THE COURT:  Oh, you don't know the half of what she

11   has done.  And I won't put it on the record, but I might talk

12   to you afterwards.

13          MR. GRIFFIN:  You got it.

14          THE COURT:  Okay.  Let me just confirm with

15   Mr. Weinreb that you have, in fact, discussed your right to

16   proceed in person, when we are able to convene in person, with

17   Mr. Griffin?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And you wish to proceed by video now

20   instead?

21          THE DEFENDANT:  Yes.

22          THE COURT:  All right.  Based on what I have heard

23   from the government and defense counsel, I am finding that the

24   interests of justice would be served by proceeding by video.

25   All of the reasons that both counsel have stated are valid;

6

1    the age of the case, the pressure on the victims to try to get

2    this behind them, the need for Mr. Weinreb to commence

3    whatever sentence I ultimately impose so that he can get that

4    behind him, and the uncertainty about when we would be able to

5    actually accommodate all these concerns if we did not proceed

6    by video.  So I am finding under the CARES Act that grounds

7    exist for us to proceed by video and we will do so.

8            Okay.  Next, let me see if the defendant, in fact,

9    wants to waive indictment in favor of the information.

10           Mr. Weinreb, just to summarize the charge for you,

11   it is a single-count information.  And it says essentially

12   that between May of 2019 and October 2019, in this judicial

13   district, you knowingly persuaded or induced or enticed an

14   individual to travel in foreign commerce to engage in sexual

15   activity and that that constituted a crime.

16           Do you understand that charge?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  All right.  There is also a forfeiture

19   provision in the information.  And the forfeiture provision

20   says that if you used any property in this crime or derived

21   any proceeds from it, you would be subject to forfeiting that

22   property or those proceeds.

23           Do you understand that?

24           THE DEFENDANT:  Yes.

25           THE COURT:  All right.  Now, in terms of how we are

1    proceeding today, Mr. Weinreb, the first thing I need to tell

2    you is you have a constitutional right to be charged by an

3    indictment of a grand jury, but you can waive that right and

4    consent to being charged by information by the U.S. Attorney.

5              Basically, what I am saying is there is two ways

6    that the U.S. Attorney can prefer federal criminal charges

7    against someone.  The usual way is that he takes his case to a

8    grand jury.  The grand jury will be comprised of somewhere

9    between 16 and 23 people and, after hearing evidence presented

10   by only the U.S. attorney, they would have to conclude that

11   there is probable cause to believe that you committed a crime.

12   If they did not so conclude, you could not be charged with a

13   crime.  You know, that is up to the grand jury.  And if the

14   grand jury does not indict, then you would walk away from

15   this.  That is your right, to proceed by indictment to the

16   grand jury.  However, if you want, you can waive your right to

17   proceed before a grand jury, in which case you get charged by

18   what is known as an information, and that is what we have

19   here.  The information, instead of being derived from what the

20   grand jury says, is, in fact, just drawn up by the

21   U.S. Attorney at his desk.  Now, again, you do not have to

22   proceed that way, but you can proceed that way, with an

23   information, and then you are giving up your right to demand

24   that the U.S. Attorney present this case to the grand jury.

25             Do you understand what I have just told you?

8

1             THE DEFENDANT:  Yes, Your Honor.

2             THE COURT:  Have you discussed waiving your right to

3  an indictment by the grand jury with your lawyer?

4             THE DEFENDANT:  Yes.

5             THE COURT:  And you understand you have an absolute

6  right to demand an indictment if you want to?

7             THE DEFENDANT:  Yes, Your Honor.

8             THE COURT:  Have any threats or promises been made

9  to induce you to waive indictment?

10            THE DEFENDANT:  No.

11            THE COURT:  Is it correct that you wish to waive

12  your right to an indictment by a grand jury?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Mr. Griffin, is there any reason why he

15  should not waive?

16            MR. GRIFFIN:  There is not.

17            THE COURT:  All right.  Now, I have been given a

18  written waiver, and I will note that it appears to be signed

19  by the defendant and his counsel.  Let me just check that.

20            Yes.  Is that your signature on the written

21  waiver --

22            THE DEFENDANT:  Yes.

23            THE COURT:  -- Mr. Weinreb?  Okay.

24            THE DEFENDANT:  Yes, sir.

25            THE COURT:  Does the government think I need to ask

9

1   any other questions before I make a finding as to whether he

2   is voluntarily waiving?

3              MR. BUSHWACK:  No, Your Honor.  Only I will just

4   note that in communications with defense counsel, that

5   certainly indicated that Mr. Weinreb signed the waiver of

6   indictment.

7              THE COURT:  Okay.  That is correct, Mr. Griffin?

8              MR. GRIFFIN:  Absolutely, Judge.  We went over it

9   with Mr. Weinreb, he signed it, he acknowledged his signature

10  to myself and Mr. Gross, and he is prepared to move forward.

11             THE COURT:  Okay.  I am therefore finding that the

12  defendant is acting knowingly and voluntarily and waiving his

13  right to an indictment and we will proceed to arraign him on

14  the information.

15             Now hang on one second, I am having a couple of

16  computer problems.

17             (Pause.)

18             Okay.  Mr. Weinreb, I have summarized the

19  information for you and I have advised you of the forfeiture

20  aspect of it.

21             Mr. Griffin, do you waive reading of the

22  information?

23             MR. GRIFFIN:  Yes, Your Honor.

24             THE COURT:  Okay.  And I think I have confirmed,

25  Mr. Weinreb, that you have talked to your lawyer as much as

1    you feel you need to about the information, the charge

2    contained in the information?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  All right.  It has one count.  What is

5    your plea to that count?

6              THE DEFENDANT:  Guilty.

7              THE COURT:  All right.  A guilty plea is entered as

8    to the single-count information subject to my ascertaining

9    that the plea is being given knowingly and voluntarily.

10             Let's have the defendant sworn, please.

11             (Defendant sworn.)

12             THE COURT:  All right.  Mr. Weinreb, before I accept

13   your guilty plea, I have to ask you a number of questions to

14   assure myself that it is, in fact, a valid plea.

15             If you do not understand any of the questions I ask

16   you, just tell me, and I will reword the question until you do

17   understand.  Okay?

18             THE DEFENDANT:  Yes.

19             THE COURT:  All right.  Do you understand that you

20   have the right to be represented by counsel whether you went

21   to trial or whether you are pleading guilty today, but at

22   every stage of this proceeding?

23             Do you understand that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  And please confirm for me that

1  Mr. Griffin, who is in fact on the video, is your attorney.

2  THE DEFENDANT:  Yes, Your Honor.

3  THE COURT:  Now, if at any time while I am asking

4  you these questions, you want to consult with him privately

5  about something, just let me know and we can arrange that on

6  this call.  All right?

7  THE DEFENDANT:  Yes, Your Honor.

8  THE COURT:  Do not hesitate to do that if you want

9  to talk to him privately.

10  Now, you have just sworn to tell the truth.  That

11  means that if you were to answer any of the questions that I

12  am about to ask you falsely, your answers could later be used

13  against you in a separate prosecution for the crimes of

14  perjury or making a false statement, so it is very important

15  that you tell me the truth.

16  Do you understand that?

17  THE DEFENDANT:  Yes, Your Honor.

18  THE COURT:  Tell me your full name, please.

19  THE DEFENDANT:  Gary Weinreb.

20  THE COURT:  And how old are you, sir?

21  THE DEFENDANT:  Forty-nine years old.

22  THE COURT:  What is the highest grade that you

23  completed in school?

24  THE DEFENDANT:  Medical school.

25  THE COURT:  And where was that?

12

1           THE DEFENDANT:  SUNY Downstate, New York.

2           THE COURT:  Here in Brooklyn?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Okay.  As you sit here today, is your

5   mind clear?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  Do you understand what is going on here?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  Are you presently or have you recently

10  been under the care of a doctor?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Tell me what for.

13          THE DEFENDANT:  I have a psychiatrist that I see on

14  an every three-month basis and I have a therapist as well.

15          THE COURT:  How often do you see the therapist?

16          THE DEFENDANT:  Twice a week for one hour each.

17          THE COURT:  All right.  Does the diagnosis that you

18  have been given have any impact on your ability to understand

19  what is going on today?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  All right.  In the last 24 hours, have

22  you taken any kind of narcotic drug?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  In the last 24 hours, have you taken any

25  kind of medication?

13

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  What have you taken?

3          THE DEFENDANT:  I took Prozac last night and I took

4   a Klonopin last night to go to sleep, around 10:00 p.m.

5          THE COURT:  Okay.  And as you sit here today, are

6   either of those medications having any effect at all on the

7   clarity of your focus or your mind?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  Okay.  What was the second one you said,

10  clonazepam?

11         THE DEFENDANT:  Klonopin.  Prozac and Klonopin.

12         THE COURT:  Do you think that has worn off by now?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  You feel perfectly sharp?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Have you ever been hospitalized or

17  treated for any kind of mental illness?

18         THE DEFENDANT:  No, Your Honor.

19         THE COURT:  Have you ever been hospitalized or

20  treated for addiction to drugs or alcohol?

21         THE DEFENDANT:  No, Your Honor.

22         THE COURT:  In the last 24 hours, have you had any

23  kind of alcoholic beverage to drink?

24         THE DEFENDANT:  No, Your Honor.

25         THE COURT:  All right.  Mr. Griffin, in your

1   opinion, is your client capable of understanding the nature of

2   these proceedings?

3               MR. GRIFFIN:  Indeed he is, Your Honor.  And the

4   medications he alluded to before are prescribed and he's

5   taking the dosage as prescribed.

6               THE COURT:  Okay.  And does he understand the rights

7   that he will be waiving by pleading guilty?

8               MR. GRIFFIN:  It is my belief he does.  We've gone

9   over them, Your Honor.

10              THE COURT:  Do you have any doubt at all as to his

11  competence to plead?

12              MR. GRIFFIN:  None.

13              THE COURT:  Have you advised him of the maximum

14  sentence and fine that could be imposed.

15              MR. GRIFFIN:  We have, Your Honor.

16              THE COURT:  And have you talked to him about the way

17  the sentencing guidelines work?

18              MR. GRIFFIN:  Yes, Your Honor.

19              THE COURT:  Okay.  Mr. Weinreb, I think I confirmed,

20  but I want to ask you again.  Have you had as much of an

21  opportunity to discuss this case with your lawyer as you feel

22  you need?

23              THE DEFENDANT:  Yes, Your Honor.

24              THE COURT:  Are you fully satisfied with the advice

25  and representation that he has given you?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And let me confirm again, you are quite

3    sure you understand the charge that has been stated in the

4    information against you?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  All right.  Then let me go over some of

7    the rights, the most important rights that you will be waiving

8    if you continue to want to plead guilty.

9          The first and most important thing that you need to

10   understand is that you do not have to plead guilty even if you

11   are guilty.  Under our legal system, the prosecutor has the

12   burden of proving the guilt of a defendant beyond a reasonable

13   doubt.  If the prosecutor cannot or does not meet that burden

14   of proof, the jury has the duty to find the defendant not

15   guilty, even if the defendant is guilty.  What that means is

16   that even if you are guilty, you still have a choice as you

17   are in front of me today.  It is up to you to decide what to

18   do, not your lawyer and not anyone else.  You can go ahead and

19   plead guilty to this information, as you apparently want to

20   do, or even now you could change your mind and tell me you

21   want to plead not guilty and go to trial and make the

22   government meet its burden of proving your guilt beyond a

23   reasonable doubt.

24         Do you understand that right now you have that

25   choice?

1       THE DEFENDANT:  Yes, Your Honor.

2       THE COURT:  Now, if you wanted to plead not guilty,

3    then under the Constitution and laws of the United States, you

4    would be entitled to a speedy and public trial by jury, with

5    the assistance of your lawyers, on the charge contained in the

6    information.  At that trial, you would be presumed innocent.

7    You would not have to prove that you were innocent.  It again

8    would be the government's burden to overcome that presumption

9    and prove you guilty by competent evidence and beyond a

10   reasonable doubt.  Again, if the government were to fail at

11   that, you know, the jury, they might think, gee, he is

12   probably guilty but we can't say he is guilty beyond a

13   reasonable doubt, they would have a duty to acquit you, if

14   that is the way it came out.

15          Do you understand that?

16       THE DEFENDANT:  Yes, Your Honor.

17       THE COURT:  All right.  But by pleading guilty, you

18   are giving up your right to have the government satisfy its

19   burden of proving that you are guilty beyond a reasonable

20   doubt.

21          Do you understand that you are giving up that right?

22       THE DEFENDANT:  Yes, Your Honor.

23       THE COURT:  Now, if you wanted to go to trial,

24   Mr. Weinreb, the witnesses for the government would have to

25   come to court and testify in your presence and your lawyers

1    would have the right to cross-examine the witnesses for the

2    government, to object to evidence offered by the government,

3    and to offer evidence on your behalf.  You could also request

4    the right to compel the attendance of witnesses by subpoena

5    who might testify in your favor.  But when you plead guilty,

6    you are giving up your right to confront the witnesses who

7    might testify against you at a trial.  You are also giving up

8    your right to offer evidence on your own behalf and to raise

9    any defenses that you might have.

10            Do you understand that you are giving up those

11   rights?

12            THE DEFENDANT:  Yes, Your Honor.

13            THE COURT:  Now, if you went to trial, you would

14   also have the right to testify on your own behalf if you chose

15   to do so.  However, you could not and would not be required to

16   testify.  Under the Constitution of the United States, a

17   defendant in a criminal case cannot be forced to take the

18   witness stand at his trial and say anything that could be used

19   against him to show that he is guilty of the crime with which

20   he is charged.  So what that means is, if you told me you

21   wanted to go to trial but you did not want to testify, I would

22   instruct the jury, after you made that final decision, that

23   they could not hold your choice not to testify against you in

24   any way.  In fact, they could not even mention it in their

25   deliberations.  That is called your right against

18

1    self-incrimination.  But by pleading guilty, you are admitting

2    your guilt and you are giving up your right against

3    self-incrimination.

4              Do you understand that you are giving up that right?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  All right.  Now, if you continue to want

7    to plead guilty, I need to ask you questions about what you

8    did in order to satisfy myself that you are, in fact, guilty

9    of the charge to which you are pleading guilty, and you are

10   going to have to answer my questions truthfully and

11   acknowledge your guilt.  Remember the oath you just took to

12   answer all questions truthfully.

13             Now, if you went to trial and you were found guilty,

14   you would have the right to appeal your conviction and all of

15   the events in the case leading up to that conviction.  But

16   when you plead guilty, you are substituting your own words for

17   what a jury might find.  And when you do that, you give up

18   your right to appeal your conviction or the finding of guilt

19   against you.

20             Do you understand that you are giving up that right

21   of appeal?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Now, once you plead guilty and I accept

24   your plea, you will be giving up your constitutional right to

25   a trial and all the other rights I have just discussed.  There

1  is not going to be a further trial of any kind.  I will simply

2  enter a judgment of guilty on the basis of your guilty plea.

3     Do you understand that?

4     THE DEFENDANT:  Yes, Your Honor.

5     THE COURT:  Are you willing to give up your right to

6  a trial and the other rights I have just discussed?

7     THE DEFENDANT:  Yes, Your Honor.

8     THE COURT:  All right.  Now, I have been given a

9  written plea agreement that the parties have entered into and

10 I want to ask some questions about that.

11    Melonie, do we have the ability to display that on

12 the screen?

13    THE CLERK:  Yes.  One moment, Judge.

14    THE COURT:  Okay.

15    (Pause.)

16    THE COURT:  And there it is.  Okay.

17    Now, let me first confirm a couple of things with

18 Mr. Weinreb before I ask him about his signature.

19    Mr. Weinreb, have you reviewed this plea agreement

20 carefully with your attorney?

21    THE DEFENDANT:  Yes.

22    THE COURT:  You have read it over, talked about

23 them?

24    THE DEFENDANT:  Yes.

25    THE COURT:  Do you understand its terms?

20

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  Does it accurately represent the entire

3   understanding or agreement that you have with the government?

4        THE DEFENDANT:  Yes, Your Honor.

5        THE COURT:  And, Mr. Griffin, can you confirm that

6   you have read and reviewed with your client the plea

7   agreement?

8        MR. GRIFFIN:  I can, Your Honor.  I can assure the

9   Court that we took the time to go through this with him page

10  by page, line by line, paragraph by paragraph.

11       THE COURT:  All right.  And I take it that it

12  reflects your understanding of the entire agreement that your

13  client has with the government?

14       MR. GRIFFIN:  Fully, yes, Judge.

15       THE COURT:  There are no side deals of any kind?

16       MR. GRIFFIN:  No, Judge.

17       MR. BUSHWACK:  I'm sorry to interrupt, Your Honor.

18  This is Michael Bushwack.

19       There is just one minor component and it's with

20  respect to the allocution that is not specifically mentioned

21  in the plea agreement.  The parties have agreed to an

22  additional allocution that we expect Mr. Weinreb to give under

23  oath today.

24       THE COURT:  Okay.  In response to my request for a

25  basis for the finding -- for the plea of guilty, right?

1        MR. BUSHWACK:  Say that again, Your Honor?  I'm

2   sorry.

3        THE COURT:  In other words, when I ask him what

4   makes you guilty, he is going to give me a statement that you

5   have all agreed on?

6        MR. BUSHWACK:  I believe that's how he is going to

7   do it.  That was my understanding with defense counsel.  But I

8   can certainly interject if necessary as well.

9        THE COURT:  Okay, that is fine, but I am not sure

10  what you are tell me then.  You have one agreement outside of

11  the written plea agreement, and what is that agreement

12  particularly?

13       MR. BUSHWACK:  It is with respect to the defendant's

14  allocution.  In addition to allocuting to the conduct which

15  brings about the charge contained in the superseding

16  information, the defendant is also going to allocute to some

17  additional facts that were agreed upon by the parties.

18       THE COURT:  Okay, now I've got it.

19       Okay.  You agree with that, Mr. Griffin?

20       MR. GRIFFIN:  Indeed, yes, Judge.

21       THE COURT:  Now, let me have Mr. Weinreb look at the

22  signature page on the agreement.

23       And, Mr. Weinreb, can you confirm for me that that

24  is, in fact, your signature?

25       THE DEFENDANT:  Yes, Your Honor, it is.

22

1          THE COURT:  All right.  Melonie, you can take that

2     off.

3          Mr. Weinreb, let me talk to you about the sentencing

4     scheme that is applicable here.

5          The offense to which you are pleading guilty to

6     violating in the information carries a term of somewhere

7     between zero-years' custody and 20-years' custody.

8          I just want to confirm that with the government.  Is

9     that right?

10          MR. BUSHWACK:  Yes, Your Honor.

11          THE COURT:  Okay.  It also provides for a minimum

12     term of supervised release of five years and a maximum term of

13     supervised release of life.  Now, supervised release refers to

14     a series of terms and conditions that would be placed upon

15     you, Mr. Weinreb, when you are discharged from custody.  There

16     are things like not committing any additional crimes,

17     reporting at regular intervals to Probation, obtaining any

18     psychological therapy that is required and other things like

19     that.  The important thing for you to remember is that if you

20     were to violate any of those terms and conditions once you are

21     released, you could be sentenced to up to another five years

22     for that violation.  And if that happens, you would not get

23     any credit for time that you had already spent in prison.

24          Do you understand that?

25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Additionally, I could impose a fine of

2     up to $250,000 for this offense, and you will need to make

3     payment to the victims of these crimes in an amount that I

4     will subsequently determine.  I will also impose a mandatory

5     $100 special assessment.  And as I mentioned to you earlier

6     today, if there is property or proceeds of property used in

7     this crime, you will be required to forfeit those as part of

8     your sentence.  In addition to those, you will be required to

9     register as a sex offender in accordance with applicable law.

10          Now, let me also ask you, Mr. Weinreb, are you a

11     citizen of the United States?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Okay.  Now, I spoke to you previously

14     about the fact that by pleading guilty, you are giving up your

15     right to appeal your conviction.  But under your plea

16     agreement, you are also giving up your right to appeal your

17     sentence as long as I sentence you to a term of 97 months or

18     less.  In other words, if I sentence you to 97 months or less,

19     you will not be able to appeal that sentence, but if I

20     sentence you to more than 97 months, then you will.

21          Do you understand that?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Okay.  Now, I also left out, there is a

24     special assessment for this crime, not only the $100 I

25     mentioned, but there is another $5,000 that is mandatory as

1   well.

2            Do you understand that?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  Okay.  Now, the next question is how am

5   I going to determine what the right sentence is for you.  You

6   know, the statute, as I have just told you, says the custodial

7   portion of the sentence will be somewhere between zero and

8   20 years, and so the question is how do I know where to come

9   out in that very broad range.  The starting point is what we

10  call sentencing guidelines.  The guidelines take into account

11  the nature of your crime and any criminal history that you

12  have.  They put those two things together on a grid and they

13  come up with a recommended range for the sentence.  Now, once

14  that initial recommended range is calculated, there might be

15  other provisions of the guidelines that would allow me to

16  depart from that range, either making it higher or making it

17  lower, sentencing you to more or less time.

18            Now, keep in mind that while those guidelines are

19  advisory, I still have an obligation to consider them, but the

20  guidelines are only one factor set forth in the statute for me

21  to consider.  The statute sets forth a number of other factors

22  that I have to consider against all of the facts and

23  circumstances of this case and who you are.  And when I

24  consider all of those factors, I may find that what we call a

25  nonguidelines sentence is appropriate.  A nonguidelines

1  sentence would be a sentence that is either higher or lower

2  than the recommended guideline range, could be either.  The

3  bottom line is that until the day of sentencing, when I get a

4  presentence report about you from the Probation Department and

5  I hear from you and your lawyer and the government, you are

6  not going to know with any certainty what the guidelines will

7  be, you are not going to know with any certainty whether there

8  might be grounds to depart from them -- that means adjust them

9  higher or lower -- and you are not going to know with any

10  certainty whether I might impose a nonguidelines sentence,

11  which, again, could be higher or lower than the recommended

12  guideline range.  In short, you are not going to know today

13  what your sentence will be and you are not going to be able to

14  withdraw your guilty plea later just because you do not like

15  the sentence.

16          Do you understand that?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Okay.  Even though the guidelines are

19  merely advisory to me, I want the attorneys to give you their

20  best estimate of what the guidelines are likely to say based

21  upon the facts available to them at this point in time.  Keep

22  in mind that this is just a guess and it could be wrong.

23          Let me ask the government, what is the guideline

24  estimate?

25          MR. BUSHWACK:  Between 70 and 87 months.

1      THE COURT:  Okay.  Mr. Griffin, do you have any

2  reason to disagree with that?

3      MR. GRIFFIN:  No, we do not disagree.  We actually

4  agree.

5      THE COURT:  Okay.  Now, I did want to ask the

6  government also, there is a provision in the agreement, I

7  noticed, that seems to lock in both sides to that

8  70- to 87-month range; is that right?

9      MR. BUSHWACK:  To be clear, it locks the parties

10  into a range of between 60 months and 87 months.

11      THE COURT:  Is that because -- oh, 60 months and

12  87 months, okay.  So the parties are free to advocate, if they

13  wish, for a sentence within the 60- to 87-months range, but

14  not anything higher and not anything lower; is that right?

15      MR. BUSHWACK:  Correct.

16      THE COURT:  All right.  Now, Mr. Weinreb, you need

17  to understand that that is what your lawyer and the government

18  have agreed to, that is not binding on me.  I could still go

19  below the 60 months or I could still go above the 87 months.

20      Do you understand that?

21      THE DEFENDANT:  Yes, Your Honor.

22      THE COURT:  And do you understand that if the

23  government's and your lawyer's guideline estimate is wrong and

24  you are sentenced to more time than the estimate, you are not

25  going to be permitted to withdraw your guilty plea?

27

1      THE DEFENDANT:  Yes, Your Honor.

2      THE COURT:  All right.  Do you have any questions

3  you want to ask me about this charge or your rights or

4  anything else related to this matter?

5      THE DEFENDANT:  No, Your Honor.  I discussed

6  everything with my lawyers.

7      THE COURT:  All right.  Are you ready to plead?

8      THE DEFENDANT:  Yes, Your Honor.

9      THE COURT:  Mr. Griffin, do you know of any reason

10  why he should not plead guilty?

11      MR. GRIFFIN:  None.

12      THE COURT:  Are you aware of any legal defense to

13  the charge?

14      MR. GRIFFIN:  No, Your Honor.

15      THE COURT:  All right.  Mr. Weinreb, let me know,

16  what is your plea to Count One of the information, guilty or

17  not guilty?

18      THE DEFENDANT:  Guilty.

19      THE COURT:  Are you pleading guilty voluntarily and

20  of your own free will?

21      THE DEFENDANT:  Yes, Your Honor.

22      THE COURT:  Has anyone threatened or forced you to

23  plead guilty?

24      THE DEFENDANT:  No, Your Honor.

25      THE COURT:  Other than the promises contained in the

28

1  written agreement and your agreement to allocute to certain

2  facts that I will ask you about in a minute, has anyone made

3  any other promises to you to get you to plead guilty?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  Has anyone made any promise to you as to

6  what your final sentence will be?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  All right.  Please tell me what you did,

9  in your own words, in connection with the act charged in

10 Count One of the information that you think makes you guilty.

11         THE DEFENDANT:  Using a cell phone, I knowingly

12 enticed a minor who was outside of the United States at the

13 time to come to Brooklyn to engage in sexual activity for

14 which I knew was a criminal offense.  I also engaged in sexual

15 intercourse with a second minor, therefore two minors,

16 identified as Victims 1 and 2, in my previous indictment

17 between the times of May 2019 and October 2019.

18         THE COURT:  Okay.  And as to the first part, when

19 you did the enticement, where did that occur?

20         THE DEFENDANT:  It occurred --

21         THE COURT:  Where were you?

22         THE DEFENDANT: -- through the use of my cell phone.

23 I was in New York.

24         THE COURT:  Okay.  Where in New York?  In Brooklyn?

25         THE DEFENDANT:  In Brooklyn, yes.

1        THE COURT:  Okay.  Is the government satisfied with

2    the allocution?

3        MR. BUSHWACK:  Just one additional fact, Your Honor.

4        When the defendant engaged in sexual intercourse

5    with the two minor victims, where did that occur?

6        THE COURT:  Where was that, Mr. Weinreb?

7        THE DEFENDANT:  The first minor was in Brooklyn.

8    And the second minor was one single episode, and it took place

9    in Queens.

10       THE COURT:  Okay.  Anything else from the

11   government?

12       MR. BUSHWACK:  The government is satisfied.  Thank

13   you, Your Honor.

14       THE COURT:  Based on the information given to me, I

15   find that the defendant is acting voluntarily, that he

16   understands his rights and the consequences of his plea, and

17   that there is a factual basis for the plea.  I therefore

18   accept the plea of guilty to Count One of the information.

19       Let's set a sentencing date for about 90 days out,

20   Melonie.

21       THE CLERK:  June 1st at 10:00 a.m.

22       THE COURT:  Does that work for everybody?

23       MR. GRIFFIN:  Yes, Your Honor.

24       MR. BUSHWACK:  Yes, Your Honor.

25       THE COURT:  Okay.  Conditions of release are to

1  continue pending sentencing?

2         MR. GRIFFIN:  Judge, we did have an application on

3  that.  I did alert the government, as well as your deputy, to

4  the fact that we had an adjustment we're asking the Court to

5  make today as it relates to Mr. Weinreb's release.

6         THE COURT:  Okay.

7         MR. GRIFFIN:  As the Court may or may not recall,

8  Mr. Weinreb is currently under home incarceration.  He is

9  permitted to come to our office, he is permitted to go to

10  court appearances, to medical treatment.  What we're asking

11  the Court to consider adding is essentially making it home

12  detention with the only added addition that he be allowed to

13  attend religious services daily.

14         Prior to this incident, Your Honor, Mr. Weinreb was

15  a very observant orthodox Jew.  He's still an orthodox Jew.

16  But prior to this, he was going sometimes two to three times

17  daily to services.  Obviously since this inception and at our

18  request, the Court has allowed him to remain in home arrest.

19  As obviously he is preparing himself for a sentence that may

20  remove him from his community, he would like to reengage on at

21  least the daily activity for his religious services.

22         I have spoken with Pretrial, to be candid with the

23  Court.  Pretrial's position was they would allow him one time

24  a week to do this.  While I appreciate that concession and I

25  appreciate them allowing that, it is just not in line with his

1  religious observations.  For many, once a week is appropriate

2  and enough, but for Mr. Weinreb it is more of a daily

3  occurrence.  And that is a request we make.

4       THE COURT:  All right.  Tell me a couple of things.

5  First, how far is the synagogue from his home?  I take it it

6  is a walking distance?

7       MR. GRIFFIN:  Yes, well, so one is in Lawrence and

8  one is in Cedarhurst.  I can ask Mr. Weinreb if they're both

9  walkable.

10      THE DEFENDANT:  So one of them is walkable on the

11  Sabbath and the other one is about a five-minute drive during

12  the week.

13      THE COURT:  Okay.  Let me hear from the government.

14      MR. BUSHWACK:  Your Honor, I spoke with

15  Mr. Weinreb's Pretrial Services officer, and Mr. Griffin did

16  accurately convey what her position is.  And I am in agreement

17  with Pretrial Services that the once a week would be

18  sufficient under the circumstances, so I am then deferring to

19  Pretrial for that.

20      THE COURT:  I have to admit, Mr. Griffin, I am not

21  familiar, and this may be nothing more than my ignorance, with

22  a custom among orthodox Jews to go multiple times a day to the

23  synagogue other than for mourning purposes -- m-o-u-r-n-i-n-g

24  -- and, you know, I am just not aware that that is done.

25      MR. GRIFFIN:  So I can alert the Court that it is.

1  And here is what I would say to the Court.  If the Court only

2  wants to allow for morning, then that is what it will be.

3  Mr. Weinreb, I am sure, can take a moment to express to the

4  Court how he has, you know, the religious life he's led up to

5  this and how that worked from a scheduling standpoint.  But if

6  the Court is comfortable with mornings, then he will be

7  graceful and thankful to the Court for that alone.

8          THE COURT:  Okay, again, I did not say morning.  I

9  said m-o-u-r-n-i-n-g.

10          MR. GRIFFIN:  Oh.  Oh, okay.

11          THE COURT:  I know when someone is in mourning for

12  the first year after the death, they generally go to synagogue

13  --

14          MR. GRIFFIN:  Oh, no.

15          THE COURT:  -- one could be in the morning, but it

16  is for the purpose of m-o-u-r-n-i-n-g.  I am neutral as to

17  what time of day it is, I am just not familiar with anyone

18  going back and forth to the synagogue three times a day.

19          Let me hear from Mr. Weinreb.  Maybe he can help

20  clarify it for me.

21          MR. GRIFFIN:  Okay.

22          THE DEFENDANT:  Yes.  Thank you, Judge.

23          So as an orthodox Jew, I have always gone to

24  synagogue three times a day, every morning for morning praise,

25  and I go afternoon and evening.  And the afternoon and evening

1   is usually, you know, put together around sunset, so like

2   right now it would be around -- 5:30 would be the afternoon

3   prayer and like 5:45 would be the evening prayer.  It's

4   standard practice in my community.

5            I think what the Judge is referring to is that

6   people who are not orthodox or not actively practicing, during

7   that one year they go to the synagogue, you know, to say

8   kaddish, but they're joining a group that's there three times

9   a day.  They're just participating -- you know, participating

10  just for those 12 months.

11            THE COURT:  Okay.  When you go to these synagogues,

12  Mr. Weinreb, how many people are there?

13            THE DEFENDANT:  I would say on the Sabbath it would

14  be about 30 people there and during the week there would be

15  about ten or twelve.

16            THE COURT:  Okay.  And are these prescribed times of

17  services that you are appearing at or do you just show up any

18  time to do your davening?

19            THE DEFENDANT:  No, they're prescribed times.

20            THE COURT:  Okay.  And is there a rabbi in charge

21  who leads these services?

22            THE DEFENDANT:  Yes.

23            THE COURT:  All right.  Have we had any problems --

24  I am asking the government -- with compliance on pretrial

25  release?

1      MR. BUSHWACK:  There have been two cyber monitoring

2  issues.  I believe both were brought to the Court's attention.

3  Those are the only two that I am aware of.

4      THE COURT:  Okay.  I am going to limit the defendant

5  to once a day he can go to shul, not the two or three times a

6  day.

7      And also, is it possible, Mr. Weinreb, to get a

8  confirmatory letter from the rabbi saying you were there?  I

9  don't mean every day, but like once a week?  Can you do that?

10      THE DEFENDANT:  Yes, Your Honor.

11      THE COURT:  All right.  Have that submitted to

12  Probation -- I'm sorry, Pretrial.  Okay?

13      THE DEFENDANT:  Yes, Your Honor.  Thank you.

14      THE COURT:  All right.  Terms of release are

15  modified to accommodate that.

16      Anything further?

17      MR. GRIFFIN:  Nothing from the defense, Judge.

18      MR. BUSHWACK:  And nothing from the government,

19  Your Honor.  Thank you.

20      THE COURT:  All right.  We will see you in June.

21      MR. GRIFFIN:  Thank you, all.

22      MR. BUSHWACK:  Thank you, Your Honor.

23      THE COURT:  Adjourned.

24      (Matter concluded.)

25